THE PENNSYLVANIA RAILROAD COMPANY et al., appellants,

*v.*

THE NATIONAL DOCKS AND NEW JERSEY JUNCTION CON-NECTING RAILWAY COMPANY, respondents.

1. The verdict of a jury, upon an appeal from an award of commissioners, fixing the compensation to be paid to a landowner for the taking of his land by eminent domain, ceases to be a criterion of the value of such land after it has been set aside.

2. The tender, to a landowner, of the amount of a verdict, which is afterward set aside, and the payment thereof into court upon his refusal to accept the same, is not the making of that just compensation which the constitution requires as a prerequisite to the taking of private property for public use, and does not entitle the condemning party to enter upon and take possession of the land which it seeks to acquire.

3. A preliminary injunction will never issue where the right of the complainant depends upon an unsettled question of law.

4. An order or decree which absolutely and finally disposes of every matter which is involved in the cause can only be made upon final hearing.

---

On appeal from an order of the chancellor, directing the issuing of a preliminary injunction, who delivered the following opinion :

The complainant is a railroad corporation, duly organized under and in pursuance of the provisions of the act to authorize the formation of railroad corporations and regulate the same, approved April 2d, 1873 (*Rev. p. 925*), and its supplements, known as the General Railroad law.

That which it is to accomplish is a direct connection, as its name indicates, between two railroads—the National Docks and the New Jersey Junction—within the corporate limits of the city of Jersey City.

Its route is, approximately, a straight line between points upon the railroads designated, about half a mile apart. The route (beginning at the southerly end and tracing it northerly) crosses meadow land and public streets, for some one thousand five hundred feet, until it reaches elevated land of the defendants, commencing at the northerly side of Railroad avenue and rising above that avenue some twenty-three feet, and extending more than five hundred feet in width northerly therefrom, upon which land the defendants have constructed a car yard. The route of the complainant's road is laid through this yard, and beyond it, northerly, reaches the New Jersey Junction railroad. It is proposed to cross the yard by means of a tunnel constructed of masonry, which, in process of construction, will necessitate the opening of the surface of the yard for its entire width and the disturbance of twenty-one railroad tracks of the defendants located and used in the yard, over the route.

The United New Jersey Railroad and Canal Company is a corporation of this state and the owner in fee of the property used for the car yard. It has leased that land, among other property, to the Pennsylvania Railroad Company, a corporation of the State of Pennsylvania, for a long term of years.

The complainant insists that by proceedings in condemnation against the two companies last named, it has acquired the right to cross the yard, by means of the tunnel indicated, in a reasonable manner, consistent with safety and the least possible interference with the ordinary and legitimate use of the car yard by the defendants. The object of the bill is to secure to the complainant the proper exercise of this right, and, as a pre-

liminary step, to obtain a mandatory injunction which will require the defendants to remove from those parts of its three most southerly tracks in the car yard, which lie over the route of crossing, cars which they continually store there, so that the complainant may safely commence its work of excavation for the tunnel. The insistment is that, by the condemnation proceedings, a right to cross the car yard has been acquired, the exercise of which, though it must, to some extent, interfere with the use of the property crossed for railroad purposes, must not so interfere as to be destructive thereof or as to exceed the bounds of reasonable necessity. Hence, it is argued, the case presented is one where there exists mutual rights of use or easement in the same land, the enjoyment of which a court of equity will control and regulate, upon being satisfied of disagreement or of misunderstanding as to the use, between the parties concerned.

This jurisdiction is established. *Delaware, Lackawanna and Western Railroad Co.* v. *Erie Railway Co.*, *6 C. E. Gr. 298*; *National Docks Railroad Co.* v. *Central Railroad Co.*, *5 Stew. Eq. 767*; *National Docks &c. Railroad Co.* v. *United Companies. &c., 24 Vr. 217*; *Jersey City and Western Railroad Co.* v. *Central Railroad Co., 3 Dick. Ch. Rep. 379*; *National Docks &c. Railroad Co.* v. *Pennsylvania Railroad Co., 7 Dick. Ch. Rep. 58, 66*; *National Docks &c. Railroad Co.* v. *Pennsylvania Railroad Co., 7 Dick. Ch. Rep. 58, 590*.

The primary question in the present case is whether the complainant has duly acquired the right it asserts.

It claims its right in virtue of proceedings in condemnation which were instituted by application for the appointment of commissioners in March, 1889, by a petition which defined the character of the crossing then contemplated. The commissioners were appointed, and thereupon, upon the application of the defendants, the proceedings were taken in review, upon *certiorari*, to the supreme court, and from thence, by writ of error at the instance of the complainant, to the court of errors and appeals. Pending this review, one of the commissioners died, and his place was filled by the appointment of another person, and that action also was reviewed upon *certiorari* at the instance of the

defendants. Thereafter two applications by the defendants to the United States circuit court further stayed proceedings. In consequence of these several litigations and the trial before the commissioners, the report of the commissioners was not made until the end of May, 1893, more than four years from the institution of the proceedings. It awarded to the defendants $182,569 for their land and damages. From this award both parties appealed to the circuit court of Hudson county, and there, in September, 1893, the complainant, by amendment permitted by the court, changed its plan of crossing from a walled cut, which could be crossed by bridges and necessitated a considerable elevation of the southerly side of the defendants' yard, to an arched tunnel, deeper in the ground than the cut, which materially reduces the elevation to which the southerly part of the yard will have to be brought. Upon trial under this plan, the jury by its verdict allowed the defendants $95,000 for their land and damages. Later, tender of the amount of this verdict, with interest thereon, was made by the complainant, and the amount of the tender being refused, it was paid to the clerk of the circuit court. Thereafter an action, similar in object to the present suit, was commenced in this court. The defendants resisted the granting of the relief sought by it, urging, among other things, that the complainant had not secured the right to enter upon their lands because it had paid the amount found as compensation to the clerk of the circuit court without the knowledge or consent of the court evinced by its order, and hence had not paid the money into court, and also, that as the public easement in Railroad avenue, at the point where the complainant's route crosses it, had been vacated by the municipal authorities, the northerly half of that avenue there was the property of the defendants free from the public easement and could not be entered upon by the complainant, without which entry it would be impracticable for the complainant to proceed with its construction. In both these contentions they were sustained by this court (7 Dick. Ch. Rep. 58), and thereupon the complainant's bill was dismissed, without prejudice, however, to another suit for the same relief, after the due payment of the amount of the verdict into court. From

this decree of dismissal the complainant appealed.    See *7 Dick. Ch. Rep. 590.*

Since this decree, the complainant has again tendered the amount of the verdict, with interest, and upon its being refused has duly paid it into court, and it has also, by condemnation proceedings, in which, upon appeal, there was a verdict of a jury, ascertained what the just compensation for the northerly half of Railroad avenue for its purposes, within its route, is, and has duly tendered that sum ($10,000), with interest, and, upon its refusal, has paid it into court.    Thus it presents a completion of the title in the particulars in which it was formerly held to be incomplete and removes the former objections to the relief sought.

The statute authorizes entry after just compensation shall first have been made and provides a method for the ascertainment of that compensation ; in the first instance by the action of commissioners, and then, if an appeal is had from the commissioners' award, by the action of a jury, and also prescribes how the compensation shall be paid, and there it stops.

In dealing with an owner who is free from disabilities, the just compensation must be tendered and actually paid if the owner will take it, but if there be disabilities or it be refused upon tender, it may be constructively paid by its deposit in court for the owner.    By such ascertainment, tender and payment the condemning company acquires the right to take possession of the land and proceed with the work of constructing its road. *Johnson* v. *Baltimore and New York Railway Co., 18 Stew. Eq. 454; Waite* v. *Port Reading Railway Co., 3 Dick. Ch. Rep. 346; Packard* v. *Bergen Neck Railway Co., 3 Dick. Ch. Rep. 281; S. C. on appeal, 3 Dick. Ch. Rep. 293; Jersey City and Western Railroad Co.* v. *Central Railroad Co., 3 Dick. Ch. Rep. 384.*

As this case stood at the filing of the present bill, a writ of error had been sued out to review the rulings of the circuit court, in accordance with which the verdict of the jury was rendered, and it was urged that pending the determination of that review the complainant's right to enter was suspended or incomplete.

The sufficient answer to this proposition has been given by

Vice-Chancellor Pitney in *Packard* v. *Bergen Neck Railway Co.*, *supra*, that the statute (*Rev. p. 928 §§ 12, 13*) does not contemplate a stay upon the suing out of a writ of error, nor is there anything in the nature and effect of a writ of error to stay the complainant's exercise of its right.

Now, by supplemental answer, it has been made to appear that, since the bill was filed, the supreme court has determined that there was error in the trial at the circuit court, which has, induced a reversal of the judgment entered upon the verdict, the setting aside of the verdict and the adjudication that it shall be for nothing holden and that a *venire de novo* shall issue.

In consequence this question is presented: Does the setting aside of the verdict affect the right to enter and proceed with the work of construction, which the complainant claims to have acquired by its tender and payment into court?

In support of an affirmative answer, it is argued that the verdict having been adjudged to be erroneous and having been set aside, it is demonstrated that the compensation tendered and paid into court was not just, and therefore that no right was acquired by the tender and payment relied on, and the appeals taken from the commissioners' report having superseded their award, as was held in *Johnson* v. *Baltimore Railway Co.*, *supra*, no right of entry can be obtained until a verdict, under correct instructions and rulings of the court, shall be had and the amount ascertained by it shall be paid.

On the other side it is urged that the amount found by the jury having been duly paid while the verdict remained unreversed, that which the statute then established as just compensation was made, and a right thereupon vested which subsequent reversal of the verdict cannot affect.

The mere reversal of the verdict for error at the trial does not determine that the compensation found is not just. It decides only that questions involved in the process of reaching it were not properly submitted to the jury, and that as they have or may have misled the jury, there must be a retrial. It may yet be decided that the sum paid by the complainant is adequate or even more than adequate compensation.

That the legislature may prescribe a period, in proceedings before an impartial tribunal authorized by it to ascertain just compensation, when a sum found shall be deemed the compensation necessary to be made to secure possession of the land by the condemning company, is too well settled to need support by citations of authorities—and this even though it be held that review of these proceedings may follow. *St. Louis, Keokuk and Northwestern Railroad Co.* v. *Clark, 119 Mo. 357.* I think that such a period is fixed by the statute here involved. The statute provides that the condemning company shall not enter upon or take possession of any land until it shall have paid the amount assessed by the commissioners in case the report of the commissioners is not appealed from, or the amount which shall be found by the jury by whom the issues "shall be tried" in case of appeal. It is to be noted that the amount to be paid is not the amount of a judgment which may be rendered in the court appealed, to, but the amount found by the jury. Such a provision implies that the legislative design was to clothe the condemning company with ability to perfect its right of entry as soon as a verdict should be had, without waiting either for judgment upon the verdict or the conclusion of proceedings in review. This language in the statute is immediately followed by a provision which permits the landowner to accept the award of commissioners without affecting an appeal therefrom, and the condemning company to pay the commissioners' award into court, and at the same time appeal from the award and take possession of the land. So far as the power sought to be conferred upon the condemning company to hold the compensation in court pending its appeal is concerned, this provision has been held to be unconstitutional (*Redman* v. *Philadelphia, Marlton and Medford Railroad Co., 6 Stew. Eq. 165*), but nevertheless it evinces a legislative purpose entirely consistent with and which supports the interpretation I have given to the language first referred to.

The evident design was to expedite the completion of a beneficial public convenience by a summary determination of just

-compensation, the payment of which is to precede the entry upon the land and prosecution of the work.

In the former application to this court for the relief now sought, Vice-Chancellor Van Fleet said, in view of the proceeding in error then pending: "The sum which must be regarded as just compensation for the land taken in this case has already been finally determined, so far, at least, as to invest the complainant with a right, on tender and refusal of the money and its payment into court, to take such possession of the land as may be necessary to enable it to proceed with the construction of its road thereon, and the sum so paid has been tendered and refused. So far I regard the complainant's case free from doubt or dispute."

In *Jersey City &c. Railroad Co.* v. *Central Railroad Co., 3 Dick. Ch. Rep. 384,* the same distinguished justice said : "As I understand the General Railroad law and the adjudications respecting its construction, the verdict of the jury that tries an appeal from the award of commissioners, fixes finally and con-clusively the sum which, in that particular case, must be regarded as just compensation, so far as may be necessary to confer upon the condemning company the right, on the payment of the money, to appropriate the property condemned. The award of the commissioners is the first step in ascertaining what is just compensation to the landowner, and the verdict of the jury that tries the appeal from such award is the last and final step."

When the complainant paid its money this verdict remained unreversed by force of the statute fixing the just compensation to be made, and, upon that payment, I think the right to enter upon the land and prosecute the work of constructing its road vested in the complainant and now remains as immutable by a subsequent reversal of the verdict, as the title of one who buys at a judicial sale in enforcement of a decree of a court of general jurisdiction, which is subsequently reversed. *Shultz* v. *Sanders, 11 Stew. Eq. 154; S. C. on appeal, 11 Stew. Eq. 293.*

It was insisted, in the next place, in virtue of the appeal by the complainant from the decree in its former suit in this court, that that suit is still pending in the court of errors and appeals,

and that as this suit is of the same nature and effect and between the same parties, notwithstanding the title here alleged depends upon another tender and different method of effecting payment into court, and the land in Railroad avenue has been taken by condemnation, this suit cannot be maintained.

I need not consider the questions suggested under this insistment. The record and proceedings in the former suit are referred to in the bill in this suit and were used upon the argument of the order to show cause. Upon inspecting that record, I find that, since the argument before me, the court of errors and appeals, by its decree, has affirmed the decree of this court and has remitted the record to this court, so that the original bill in the former cause stands dismissed without prejudice to the present proceeding. The opinion of the court of errors and appeals is found in *30 Atl. Rep. 581.*

It was next urged by the defendants that the proceedings for the vacation of Railroad avenue have been removed to the supreme court for review, and that in case it shall be determined that they are illegal, then Railroad avenue will be an existing highway over which the complainant cannot construct its railway upon the grade it proposes, which is above the highway, but not high enough to permit free and uninterrupted use of the highway as the statute (*Rev. p. 930 § 14*) requires, and as the complainant has no right to cross an existing highway at such a grade, and it is uncertain whether, if the proceedings for the vacation of Railroad avenue be set aside, a new and lawful vacation of it or change of its grade can be had, this court should not compel the defendants to submit to the inconvenience and damage they will sustain in the construction of a crossing which may never be available for the complainant's purposes.

A proposition somewhat similar to this was presented to Vice-Chancellor Van Fleet in the former suit, by contention that the injunction desired should not issue because the defendants' land in Railroad avenue, within the complainant's route, had not been condemned, and, the public easement having been vacated, the complainant could not enter upon it to reach the point at which it desired to commence work, and the issuance of an injunction

to remove cars from three tracks over the complainant's route at the southerly side of the car yard would work the defendants' inconvenience without benefit to the complainant. The vice-chancellor agreed to the proposition. That position, I think, was more tenable than this. If it be conceded that the proceedings for the vacation of Railroad avenue are illegal, then there can be no doubt of the right of the complainant to reach the southerly side of the car yard at Railroad avenue and work over that avenue with vehicles which may lawfully pass over a highway in the enjoyment of the public easement. But if the vacation be legal, then the Railroad avenue condemnation proceedings and tender and payments into court thereunder, give the complainant a special right of possession of the land condemned for the purpose, not only of crossing with its road, but also for the purpose of construction incidental to the maintenance and completion of that road. But more than this, upon examination of the amended plan of crossing, I do not find that the elevation of the roadbed of the complainant through its proposed tunnel is stated. The maximum height of the crown of the completed arch is given, but the depth to which the walls may go is not limited. Hence, the roadbed at Railroad avenue may be constructed upon the present grade of that highway. With the consent of the municipality such a crossing will be legal. This situation is then presented : The vacation proceedings have not been declared to be illegal. If they are illegal, the complainant may lawfully cross into its tunnel by procuring the assent of the municipality to a grade crossing, or it may secure a change in the grade of Railroad avenue or a new vacation of that highway. It thus appears that the crossing condemned through the defendants' yard is not an impossibility.

Under such circumstances I fail to perceive any sufficient reason for refusing the complainant the aid it seeks merely because it has not yet acquired the right to construct and operate its railroad across Railroad avenue. Months will elapse before the tunnel can be completed, and in that time the review of the proceedings for the vacation of Railroad avenue may be completed, and, if they result unfavorably to the complainant, either

a new vacation, a change in the grade of Railroad avenue, or a consent to a grade crossing may be had. But, however this may be, I think it would establish a precedent, detrimental to the expeditious construction of railroads and consequent development of the state, to hold that chancery will not aid the proper enjoyment of a duly-acquired right to cross another railway, until the right to the whole proposed route of the new company shall be actually secured. If the condemning company were not solvent and acting in good faith, there might possibly be reason, in the situation stated, for staying the hand of the court. But here the condemning company has given every evidence of being possessed of ample means, and of being intent upon the completion of its road in good faith. Its entire route, with the exception of the right to cross Railroad avenue on grade or at an insufficient height above its present grade, to admit of traffic in that highway at its present grade, has been secured. It has constructed an expensive iron or steel trestle, resting upon stone foundations, from its southerly terminus to Railroad avenue, and over a portion of that avenue it has built an expensive stone causeway, and besides this it has practically paid the defendants more than $105,000 and now proposes to begin the construction of a tunnel which will probably exceed in cost all the work that it has thus far accomplished, and it submits to the control of this court in the performance of the work of building that tunnel, within the proper limits of the right it has secured. There is no suggestion of its inability to complete the tunnel as soon as the performance of the work is practicable with the least possible injury to the defendants.

The consequence of an inability of the complainant to cross Railroad avenue with its railway will not be detrimental to the defendants if the tunnel be built with due expedition, and in the manner contemplated in the condemnation proceedings. After it shall be completed, if the railway cannot be operated through it, the injury will fall upon the complainant alone.

It has been further objected that it does not appear that the complainant and defendants fail to agree as to the mutual use of

the land in which the crossing is to be constructed; in other words, as to the proper method of constructing the tunnel.

The contention before me demonstrates such a disagreement. At the condemnation trial in the Hudson county circuit court the complainant's counsel declared that his client "must make this crossing in the most reasonable and consistent way of safety and also with the least possible interference with the operation of the old company's line," and later the same counsel declared that an opening of the entire route at one time for the construction of the tunnel would be unreasonable. The condemnation was tried apparently upon the understanding, by court, jury and parties, that the construction is to be accomplished with the least possible injury to the defendants, under a method of construction which under all circumstances shall be reasonable.

Upon that understanding the defendants now urge that it will be reasonable and of the least injury to them for the complainant to support the tracks under which excavation shall be made, during the excavation, by the use of stringers properly supported. They think that the walls of the tunnel may be constructed under the supported tracks and that it may be feasible to so elevate the stringers that the arch of the tunnel can be turned while the tracks are in use. On the other hand, the complainant contends that it should be allowed to cut three of the defendants' tracks, and upon their restoration over the completed tunnel cut three other tracks, and, pursuing such a course through the yard, shall not at any time put more than three tracks in disuse. It objects that if it should be required to support all tracks over its excavation during the progress of the work, the work would be retarded by the obstructions which the stringers, posts and bracings would occasion to the general prosecution of the work, and particularly to the use of derricks necessary to the expeditious building of the walls of the tunnel. It also objects that it would be difficult to securely support the tracks by stringers unless they can project beyond the cut, on each side thereof, for some feet, so as to obtain a more secure support for their ends than the edges of the cut will afford, though those edges should be shored up in the most approved manner, and, as the defend-

ants will not consent to such extension of the stringers beyond the route condemned, it should not be required to support the tracks.

This disagreement, in addition to the attitude of the parties to each other, as is evinced by the long litigation to which I have referred, convinces me that necessity now exists for the interference of this court. *Bonaparte* v. *Camden and Amboy Railroad Co., Baldw. 205, 232.*

I am of opinion that the complainant should be permitted to enter upon the condemned route of crossing and prosecute the work proposed, but in such manner that not more than three of the defendants' tracks shall be in disuse at any time. I think that, during the progress of excavation, the tracks under which the excavation is being done may be supported so that cars may be moved over them in the ordinary and necessary use of the car yard. I am also of opinion that, during the construction of the walls and arch, the complainant should be permitted to cut the tracks and keep them in disuse so long as reasonable expedition in that construction demands. It is obvious to me that cars should not be stored or suffered to remain upon temporarily-supported tracks, and, because of that, that the number of such tracks should also be limited to three at one time.

I will order that an injunction issue to prevent the further storage of cars upon the three most southerly tracks of the car yard, over the complainant's condemned right of way, pending the construction of the tunnel at that point, but will require the complainant to support those tracks so that cars may be moved over them as necessity in the use of the yard demands, until the excavation under them for the tunnel shall be completed. Then similar restraint in the use of the next three tracks shall become operative, and those tracks shall be supported until the excavation under them for the tunnel shall be completed. As the excavation under the second set of three tracks progresses, the first three may be cut and the tunnel completed under their location, and, after completion of the tunnel, the tracks shall be replaced. Thereupon, the second three tracks may be cut and the work of tunnel construction commenced under their loca-

tion and the work of excavation go on under the third three tracks properly supported, and in this manner the work proceed throughout the yard. The practical working of this method of procedure may hereafter render some modification in it or addition to it advisable; therefore, either party, upon notice to the other, may, from time to time, as the work progresses, apply for modification or addition.

*Mr. James B. Vredenburgh* and *Mr. Richard V. Lindabury*, for the appellants.

*Mr. Charles D. Thompson* and *Mr. Gilbert Collins*, for the respondents.

The opinion of the court was delivered by

GUMMERE, J.

This appeal is taken from an order of the chancellor providing the terms upon which, and the manner in which, the respondent shall construct its railroad across the car yard of the appellants, and directing that a preliminary injunction issue enjoining the appellants from interfering with the respondent in the construction of its railroad through said car yard in the manner designated in the order.

The facts upon which the order appealed from was made, briefly stated, are these: The respondent instituted proceedings to condemn a right of way for its railroad across the car yard of the appellants. Those proceedings resulted in the making of an award by commissioners of $182,596 to the appellants as the compensation to which they were entitled for the taking of their land. There was an appeal taken from this award by the respondent to the circuit court, and at the trial it substituted a new method of crossing the appellants' yard for that which had been considered by the commissioners. The jury, upon the trial of the appeal, by their verdict, awarded to the appellants the sum of $95,000 as the compensation to which they were entitled for the taking of their land by the substituted method of crossing. The

amount of this verdict was tendered to the appellants, and, upon their refusal to accept it, the respondent paid it into court, and then filed its bill in chancery setting out these facts, and stating that it was nevertheless being hindered and prevented by the appellants in the construction of that portion of its road, and praying the court to direct the manner in which, and the terms upon which, it should construct its railroad across the appellants' car yard, and also to restrain the appellants, by injunction, from interfering with it in the construction of its railroad in the manner and upon the terms which the chancellor should direct.

An order to show cause why an injunction should not issue in accordance with the prayer of the bill was thereupon made by the chancellor. Before the return of the order to show cause the appellants filed their answer to the bill of complaint, having previously sued out a writ of error to the supreme court to review certain errors alleged to have been committed by the circuit judge upon the trial of the appeal from the award of commissioners. The supreme court, after considering the alleged errors, set aside the verdict which had been rendered, and directed a new trial of the appeal; whereupon the appellants filed a supplemental answer, alleging the annulling of the verdict as an additional reason why the respondent was not entitled to the relief which it sought.

In this situation of affairs the chancellor, considering that the tendering of the verdict by the respondent to the appellants, and the subsequent payment thereof into court, was the making of that just compensation which the constitution requires as a prerequisite to the taking of private property for public use, notwithstanding the fact that such verdict had been set aside and annulled, and that, consequently, the respondent was entitled to have the order to show cause made absolute, made the order which is now brought up for review.

The ground upon which the chancellor bases his order, namely, that the payment into court by the respondent of the amount of this verdict, after tender and refusal by the appellants, vested in the respondent the right to enter upon and take possession of the land of the appellants, and that such right remained immu--

table by the subsequent reversal of the verdict, is not tenable. The effect of the judgment of the supreme court, in vacating the judgment of the circuit court and annulling the verdict upon which it rested, was to place the parties in exactly the same condition in which they were before the trial of the appeal from the award of commissioners was begun. *Keicher* v. *Turnpike Company, 33 Ind. 334; Dater* v. *Troy Turnpike Co.*, 2 *Hill 629.* After the verdict was annulled it could no longer be considered as a criterion of the value of the land taken ; much less could it be regarded as the just compensation required by the constitution, for the appellants no longer had any right to appropriate to their use the amount thereof which had been deposited in court; they were then only entitled to such sum as another jury should award them as compensation, upon a new trial of the appeal.

The command of the constitution is that compensation shall be made to the owners—that is, that the money shall become theirs absolutely, and that they shall have the same dominion over it that they had over the land before it was taken, and nothing short of this will satisfy the constitutional requirement. *Redman* v. *Philadelphia &c. Railroad Co.*, 6 *Stew. Eq. 169.*

In this case no compensation, within the meaning of the constitutional provision, has yet been made by the respondent to the appellants for the land proposed to be taken, and, for this reason, the order appealed from should be reversed.

But even if a different conclusion had been reached upon the effect which the judgment of the supreme court, setting aside this verdict, has upon the rights of these parties, the result would be the same, so far as the determination of this appeal is concerned, for at best the right of the respondent to take possession of the land condemned, under the condition of affairs which exists in this case, must be admitted to be an unsettled question in this state, and nothing is more firmly settled in this court than that a preliminary injunction will not issue where the right which the complainant seeks to have protected is in doubt. *Citizens' Coach Co.* v. *Camden Horse Railroad Co., 2 Stew. Eq. 304; Haggerty* v. *Lee, 18 Stew. Eq. 256.*

13

Moreover, the order appealed from, although it purports to be a mere preliminary order, made in the inception of the case and upon *ex parte* affidavits, is, in reality, nothing more nor less than a final decree, for it disposes, absolutely and finally, of every matter which is involved in this suit. An order or decree of this character can only be made upon final hearing, had upon pleadings and proofs taken upon due notice and in accordance with the rules and practice of the court.

The order appealed from should be reversed.

*For reversal* — THE CHIEF-JUSTICE, GUMMERE, MAGIE, REED, VAN SYCKEL, SIMS—6.

*For affirmance*—DIXON, LIPPINCOTT, BOGERT, BROWN—4.